NICHOLS, Labor Commissioner, v. PARK.

No. 10453.

Court of Civil Appeals of Texas.
San Antonio.

Sept. 7, 1938.

William McCraw, Atty. Gen., and T. F. Morrow, Phil Overton, and Everett Looney, all of Austin, for appellant.

H. D. Barrow and Walter E. Jones, both of Jourdanton, for appellee.

SLATTON, Justice.

F. E. Nichols, in the capacity of Labor Commissioner of Texas, through the Attorney General, filed this action in the District Court of Atascosa County against Wilson Park.

It was alleged that Park was the owner and operator of a cleaning and pressing business situated in the town of Jourdanton, and in such business, Park was using a steam boiler without compliance with applicable provisions of House Bill No. 352, Forty-Fifth Legislature, and the Rules and Regulations promulgated thereunder. The Commissioner sought to restrain the operation of such boiler until Park had complied with the law and rules above mentioned. The trial court issued a restraining order as prayed for by the Commissioner. Thereup-

on Park moved to dissolve such order and upon the hearing, the trial court dissolved the restraining order and denied a temporary injunction, hence Nichols appeals.

The action of the Labor Commissioner is predicated upon the authority expressed by the Legislature, Acts 1937, p. 893, Ch. 436, designated in Vernon's Annotated Texas Civil Statutes as Art. 5221c.

At the hearing, the proof tended to show that Park was operating a boiler in his cleaning and pressing business situated in the Town of Jourdanton. That such boiler had not been inspected under the terms of the Act because of the refusal of Park to pay the fee and allow the inspection. It was shown that the boiler was being operated without a safety valve and without a stop valve in the steam line. The boiler at the time of observation of the witness had steam pressure in excess of fifteen pounds extending between twenty-five and thirty pounds. The opinion was expressed by one of the witnesses that the operation of the boiler was a menace to the lives and property of the people in the Town of Jourdanton. Proof was offered by the Commissioner of Labor that certain Rules and Regulations had been promulgated after notice and hearing, and that such Rules had been published. Rules 15, 16 and 17 were offered in evidence.

Witnesses were tendered by Park who gave evidence which tended to show similarity between boilers used by cotton gins and those used by cleaning and pressing establishments.

The Act provides that: "No steam boiler, unless otherwise specifically exempted in this Act, shall be operated within the State of Texas unless such boiler has been registered with the Bureau of Labor Statistics and there shall have been issued a Certificate of Operation for such boiler." Vernon's Ann.Civ.St. art. 5221c, § 2. The term "boiler" as used in the Act is defined to mean any vessel used for generating steam for power or heating purposes. Vernon's Ann.Civ.St. art. 5221c, § 1.

The Act further provides that "* * * if the operation of such boiler * * * shall constitute a serious menace to the life and safety of any person or persons in or about the premises, * * * the Commissioner * * * shall apply to the District Court in a suit brought by [attorneys representing the State], in the county in which such boiler is located, for an injunction restraining the operation of said boiler until

the unsafe condition \* \* \* shall be corrected and a Certificate of Operation issued." Vernon's Ann.Civ.St. art. 5221c, § 2.

The Act contains six classes of boilers which are exempted by its terms. By Section 6 of the Act, Vernon's Ann.Civ.St. art. 5221c, § 6, the Commissioner is empowered to promulgate and enforce a code of Rules and Regulations in keeping with Standard Usage for the construction, installation, use, maintenance and operation of steam boilers and to require such devices and safeguards and other reasonable means and methods to insure safe operation of steam boilers and the registration thereof.

The Act empowers the Commissioner to fix and collect fees for the inspection of steam boilers covered by the Act not exceeding $2.50 for each external inspection, and not to exceed $7.50 for each internal inspection. Vernon's Ann.Civ.St. art. 5221c, § 12.

Lastly, the Act provides: "Should any section, subsection, sentence, clause, phrase, provision or exemption of this Act be declared unconstitutional or invalid for any reason such invalidity shall not affect the remaining portions or provisions hereof." Vernon's Ann.Civ.St. art. 5221c, § 19.

■ The Statute here in question deals with a subject clearly within the scope of the police power. In 9 Texas Jurisprudence, Sec. 24, p. 502, it is said: "The police power is a grant of authority from the people to their governmental agents for the protection of the health, safety, comfort, and welfare of the public."

The Legislature, in the exercise of the police power in the passage of the Act, clearly declares a legislative policy which has for its purpose the safety, comfort and welfare of the public. The police power is broad and comprehensive, Spann v. City of Dallas, 111 Tex. 350, 235 S.W. 513, 19 A. L.R. 1387, and no doubt, an exercise of the police power is ordinarily an abridgment of private rights; yet the rights of the individual must yield to the public safety. Spann Case, supra. Of course, the exercise of this power is subject to judicial review. Missouri, K. & T. Ry. Co. v. Improvement District, 117 Tex. 34, 297 S.W. 206.

■ A statute, to be justified under the authority of the police power, must be reasonable in the light of all the circumstances. Otherwise, it may be an unlawful interference with the property and rights of the individual. The issue to be determined in such a case involves a consideration of the value of the benefits to the public and the expense and costs imposed upon the complainant. Missouri, K. & T. R. Co. v. Improvement District, supra.

In the present case, the statute imposes upon Park the maximum fee allowed to be fixed and collected, viz: $10. This amount passes into oblivion when compared to the cost and expense, as well as the calamitous results which would reasonably result from the explosion of a steam boiler caused by the failure to use safety devices in its operation, or because of improper or no inspection.

■ It is insisted by Park, through his fifth and sixth propositions, that because the Act exempts boilers used for agricultural purposes and in cotton gins, without any rational or reasonable difference between boilers used in such occupations and that of Park, such law is discriminatory and offends against equal protection of the law. In the case of Bradford et al. v. City of Houston, Tex.Civ.App., 4 S.W.2d 592, it is said [page 594]:

"The Legislature \* \* \* acting within their grant of power, may make reasonable classifications of persons or things for the various purposes of legislation. The only limitation on that power is that it must not be 'arbitrary, unreasonable, and unjust.' 12 C.J. 1128, § 855. In said section 855, the following affirmative statement of the rule is announced:

" 'If there is a reasonable ground for the classification and the law operates equally on all within the same class, it is valid.' "

It has been ruled by the Supreme Court of the United States that the fact that a statute discriminates in favor of a certain class does not make it arbitrary, if the discrimination is founded upon a reasonable distinction, American Sugar Ref. Co. v. Louisiana, 179 U.S. 89, 21 S.Ct. 43, 45 L. Ed. 102, or if any state of facts reasonably can be conceived to sustain it. Quong Wing v. Kirkendall, 223 U.S. 59, 32 S.Ct. 192, 56 L.Ed. 350.

The Supreme Court of this State sustained a law that made exemptions of motor vehicles used for agricultural purposes from the registration law. Allred v. J. C. Engleman, Inc., 123 Tex. 205, 61 S.W.2d 75, 91 A. L.R. 417. Other exemptions made the basis of Park's complaint have been upheld by the Supreme Court of Minnesota. State ex rel. Graham v. McMahon, 65 Minn. 453, 68 N. W. 77; Davidson v. Patnaude et al., 145 Minn. 371, 177 N.W. 495.

Many different states of facts suggest themselves to show a reasonable difference between steam boilers used in cotton gins and for agricultural purposes, and those used in cleaning and pressing establishments situated in cities and towns. It is deemed unnecessary to mention them for the reason that the statute by its own terms provides that should any exemption of this Act be declared unconstitutional or invalid for any reason, such invalidity shall not affect the remaining portions or provisions hereof.

■ A legislative enactment may be unconstitutional in part and valid as to its other provisions. City of Rockdale v. Cureton, 111 Tex. 136, 229 S.W. 852.

If the unconstitutional portion of the statute is stricken out and that which remains is complete in itself and capable of being executed in accordance with legislative intent, it must be sustained. Memphis Cotton Oil Co. v. Tolbert, Tex.Civ.App., 171 S.W. 309, writ refused.

■ The caption and the Act in all of its parts evidence a legislative intent to provide for the inspection of steam boilers. If the legislature exceeded its power by the exception of certain steam boilers from the provision of the Act, by adding the saving clause it expressed a legislative intent that the Act be enforced with the exceptions stricken.

The complainant here not being one of the excepted class, it is enough to say that the Act as to him is not subject to the constitutional inhibition urged, and in so holding, it is not necessary to strike out the exemptions contained in the statute. It will be time enough to pass upon those when brought before us.

■ It is next contended by Park that the Act does not apply to his steam boiler because it is used for the purpose of pressing cloth and not for generating steam for power or heat. The Act defines what is meant by the term "boiler." The evidence shows that the steam boiler in question is used for the purpose of heating cloth through the application of hot steam in order that the press may smooth the wrinkles out of the cloth. Thus the steam is used for heating purposes. That the heating of the cloth by the application of hot steam is only incidental to cleaning and pressing clothes is of little importance.

■ It is also argued by Park that, the trial court having found the law and the facts with him, a denial of the injunction was proper although the Act be constitutional.

We have considered the evidence contained in the Statement of Facts and are of the opinion that such evidence showed a right to an injunction. The trial court evidently was of the opinion that the act invaded constitutional inhibitions.

Therefore, the decree entered by the trial court will be reversed and the injunction will be here granted in accordance with the prayer of the Commissioner.

Reversed and injunction granted.