STATE OF FLORIDA, upon relation of ALONZO B. MCMULLEN, FRASIER T. BLOUNT, THOMAS A. DYER, JAMES T. SWANN and GUS A. BREMER, as Members of and Constituting the Board of Elections of the City of Tampa, Florida, *Relators,* v. W. A. JOHNSON, as City Clerk of the City of Tampa, Florida, *Respondent.*

135 So. 816.

Division B.

Opinion filed June 15, 1931.

BROWN, J., dissenting.

A. B. McMullen, Thomas A. Dyer, and Frank T. Phillips, of Tampa, for Relators;

Karl E. Whitaker, W. F. Himes and H. Lane Coachman, of Tampa, for Respondent.

DAVIS, J.—An alternative writ of mandamus was issued to the respondent, as City Clerk of the City of Tampa, Florida, directing that he deliver to the relators as constituting the Board of Elections for the City of Tampa, Florida, all registration books, ballot boxes and all other election records and equipment of the City of Tampa, Florida, or show cause why he should not be required so to do.

The essential allegations upon which the alternative writ issued are that by virtue of an act of the Legislature passed at its 1931 session, known as Senate Bill No. 512, the relators organized and took office as the Board of Elections for the City of Tampa, Florida; that on May 22, 1931, they demanded of the respondent W. A. Johnson, as City Clerk for the City of Tampa, Florida, that he deliver and turn over to relators as members of and constituting the Board of

Elections for the City of Tampa all registration books, ballot boxes, and all other election records and equipment of the City of Tampa, Florida, as required by said Act of the Legislature.

The Act of the Legislature in question is an Act entitled as follows:

"An Act Regulating all Municipal Elections Held in the City of Tampa, Florida; Creating a Board of Elections for the City of Tampa, Florida, to conduct, Hold, and Regulate All Municipal Elections, Including Primary Elections, Held in said City; Fixing the Number of the Members of said Board and Their Term of Office; Naming the Members of the First Board and Fixing Their Terms of Office; Prescribing the Qualifications, Duties, Powers, Compensation, and Method of Election of the Members of said Board; Prescribing the Duties, and Powers of said Board; Providing for and Regulating Electors and Elections in said City; Defining Political Parties in said City; Providing for the Nomination of all Candidates for all Elective Municipal Offices in said City by All Political Parties in said City; and Repealing All laws and all Parts of Laws in Conflict with this Act.".

By its terms there was created a Board of Elections for the City of Tampa, Florida, to be composed of five members, each of whom should hold office for the term of four years, after the first organization of the Board. The names of the persons who should constitute the first Board under the Act were set forth therein and it was provided that such named persons and their successors in office as members of said Election should be deemed officers of the City of Tampa. The specific duties of the Board were in general to consist of conducting, holding and regulating all municipal elections of every kind, nature or character whatsoever held within the City, or any political subdivision thereof, including general, special, primary, bond, referendum, recall, charter elections and all other municipal elections. It is specifically provided in the Act that no municipal election of any kind, nature or character whatsoever shall be

held within the City, or any political subdivision thereof, except in accordance with the provisions of said Act (Senate Bill No. 512), and under the supervision and regulation of the Board created thereby. It is further provided in the Act that all powers and duties imposed upon and vested in the Mayor, the Board of Representatives, and the City Clerk, by the General and Special Laws of the State of Florida applicable to the City, the Charter of the City, and the Ordinances of the City passed in pursuance of said laws, with reference to the registration of voters, conducting, holding and regulating municipal elections, should be and they are thereby imposed upon and vested in said Board of Elections created by said Act, and said Board was thereby required to perform and exercise all such duties and powers. The statute was comprehensive in its scope in so far as municipal elections were concerned and the other provisions comprehended therein need not be referred to in detail in this opinion.

In considering this case, we pass by the question suggested but not insisted upon, that the respondent City Clerk is without legal standing in this Court to raise the question of the constitutionality of the Act in question as a defense to the Alternative Writ of Mandamus. See State ex rel. Buford v. Board of Equalizers, 84 Fla. 592, 94 So. 681. In that case the rule was declared to be that, ''A court will not, as a general rule, pass upon a constitutional question and decide a statute to be invalid, unless a decision upon that very point becomes necessary, and it is also a rule that a court will not listen to an objection made to the constitutionality of a statute by a party whose personal or property rights it does not affect, and who has, therefore, no interest in defeating it. In mandamus proceedings against a public officer involving the performance of official duties, nothing can be inquired into but the question of duty on the face of the statute and the ministerial character of the duty he is charged to perform.''

In the case at bar, the respondent insists that he has an interest in the subject of the present proceeding sufficient to entitle him to raise the constitutionality of the Statute under consideration. Whether this contention should be sustained or not is not required to be decided because the relators have in effect waived the point in the oral argument at the bar.

Passing to the question of the constitutionality of the statute, the Act appears to be within the rule of permissible legislation for cities and towns authorized by Section 8 of Article VIII of the Constitution of Florida as construed by this Court in the case of State ex rel. Johnson, Attorney General, vs. Johns, 92 Fla. 187, 109 So. 228.

In that case this Court, speaking through Mr. Justice Whitfield, stated the rule of constitutional law regarding such matters to be as follows:

"Where a statute does not violate the Federal or State Constitution, the legislative will is supreme, and its policy is not subject to judicial review. The courts have no veto power and do not assume to regulate State policy; but they recognize and enforce the policy of the law as expressed in valid enactments, and decline to enforce statutes only when to do so would violate organic law.

Whatever the phrase 'local self-government' may mean in government, the Constitution of this State contains no express provisions with reference thereto and there are no provisions of the organic law that so modify the express provision of Section 8, Article VIII of the Constitution that 'the legislature shall have power to establish and to abolish municipalities, to provide for their government, to prescribe their jurisdiction and powers, and to alter or amend the same at any time,' as to withhold from the legislature the power to designate by statute the particular persons who shall exercise the powers of a municipality created by statute, such power to designate being a part of or incidental to the quoted organic power to establish municipalities, to provide for their government and to prescribe their jurisdiction and powers.

The courts should not declare a statute to be void or inoperative on the ground that it is opposed to a spirit that is supposed to pervade the constitution, or because the statute is considered unjust or unwise or impolitic.

In exercising the powers expressly conferred by Section 8, Article VIII, the legislature must not violate any other provision of organic law.

The principle of 'local self-government' is not operative to nullify legislative enactment that does not violate any expressed or implied provision of the State or Federal Constitution.''

The Courts are not concerned with the wisdom of statutes, nor the propriety of the policy intended to be established thereby, so long as constitutional provisions expressed or implied, are not violated.

The Act in question creates a statutory Board of Elections for the City of Tampa. Very little, if any, wholly discretionary power is vested in the Board by the terms of the Act itself. Its principal duty is to faithfully carry out the *law* of the State of Florida and the provisions of the ordinances of Tampa relating to the conduct of elections. While its powers are complete under the law for the purpose of enabling it to perform its duties, yet any doubt as to the scope and extent of such powers is to be resolved against the Board in cases where the exercise of particular powers may be challenged and shown to be of doubtful character.

It is neither appropriate nor required that in the disposition of this case this Court shall undertake to define each of the powers which may be lawfully exercised by the Board within the limitations prescribed by the Constitution and the Statute. Such questions must de decided as they may arise in the course of the administration of the Act which we hold to be constitutional and valid in so far as the general powers and duties of the Board created by it are concerned. Neither is the court required in this proceeding to finally determine and adjudicate any objection that might be raised in some other appropriate proceeding

which may hereafter be brought by the State on its prerogative to challenge the manner of selecting successors to the original Board members named in the statute.

This Court has always recognized the doctrine that palpable abuses of legislative power committed in the enactment of laws, as well as plain abuses of delegated powers conferred by laws, when they interfere with the personal or property rights of individuals entitled to the protection of the law, are subject to redress by the Courts.

It may well be conceded, and here solemnly declared, that the power of the Legislature under Section 8 of Article VIII of the Constitution to deal with municipalities is not so unlimited or unbridled to the extent that arbitrary action and plain abuse of power can be constitutionally accomplished by particular legislation enacted under authority of that Section. Cases involving charges of abuse of power must generally be decided on the merits of each case as it arises. It is impractical, if not impossible, in most cases of this kind in one expression of judicial opinion to undertake to define the exact boundary line between that which is permissible and constitutional and that which is arbitrary and a plain abuse of power.

The most that can be said in this kind of a case is that the present Act of the Legislature under consideration does not appear to transcend that indefinable boundary line which separates the orbit of permissible legislative action under Section 8 of Article VIII of the Constitution from that which is arbitrary, a plain abuse of power and consequently unconstitutional.

The case of State v. City of Stuart, 97 Fla. 69, 120 So. 335, is a sufficient illustration of the power of the Courts to strike down statutes which amount to a plain abuse of the constitutional legislative prerogative existing under Section 8 of Article VIII of the Constitution, even though no specific item, sentence or clause of the Constitution was

in express terms shown to have been violated by the legislation thus declared void.

The Act in question here can hardly be said to be reasonably subject to the criticism that it sets up a municipal principality or hierarchy, because notwithstanding this Act, all of the existing officials of the City of Tampa, as provided for by its charter, remain elective by the people as heretofore. All that the Act does is to set up a special Election Board to carry out the prescribed elections in accordance with the law. Presumably the members of the Board act as non partisan officials standing indifferent between contending political factions and opposing parties who may be concerned with the result of the expression of the popular will at the polls. The Constitution itself in a distinct section provides that ''The Legislature shall enact such laws as will preserve the purity of the ballot given under this Constitution'' (Section 9 of Article VI). If the Legislature has already provided by other provisions of law for municipal elections and it deems a special election Board to be necessary in a particular municipality to effectuate the general spirit thus expressed in the foregoing provision of the organic law, whether the policy of such legislation be sound or not, we must give it the benefit of the presumption that such was the legislative purpose which may reasonably be supposed to have actuated its enactment. Rast v. Van Deman & Lewis Co., 240 U. S. 342; 36 Sup. Ct. 370; 60 L. Ed. 679; L. R. A. 1917-A 421; Annotated Cases 1917-B 455.

If the Board provided for exceeds its just powers, or fails to conduct itself in accordance with law, or the powers of the Board are administered with an unequal hand and an evil eye, appropriate remedies at law and in equity exist to rectify the violation or redress the wrong. The fact that power is broadly given and may be possibly abused by incompetent or unscrupulous officials chosen to administer it, does not justify the argument that the power itself can not

constitutionally exist because to recognize its existence would be to make possible the abuse that is feared.

Other points raised by the demurrer to the alternative writ of mandamus need not be specifically discussed in this opinion. It is sufficient to say that they have been carefully considered and are not sustained by the Court.

For the reasons hereinbefore pointed out, the demurrer of the respondent to the alternative writ of mandamus is hereby overruled, with permission to answer over within five days, in default of which judgment final will be entered and a peremptory writ issued as prayed.

It is so ordered.

WHITFIELD, P.J., AND TERRELL, J., concur.

BUFORD, C.J., AND ELLIS, J., concur in the opinion and judgment.

BROWN, J., dissents.

BROWN, J., dissenting:—No matter how beneficent the purpose of this Act may be, nor how well qualified the members of the Board named in the Act may also be, I cannot escape the conclusion that the Act, creating as it does, a self-perpetuating board, with powers to fill future vacancies therein, is contrary to the implications of the constitution, arising from Section 2 of the Declaration of Rights; Article II; and Section 7 of Article IV, of the Constitution. This Act goes further than the Act considered in State v. Johns, 92 Fla. 187, 109 So. 228, though the writer thought that even that Act went too far, as indicated by the dissenting opinion in that case.